**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Offen Petroleum LLC, a Colorado limited liability company, | No. CV-25-00061-TUC-JCH (EJM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| L&J Express, LLC, *et al.*, | |
| Defendants. | |

Pending before the Court is Defendant Midnight Sun Logistics, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 24), Defendant Texas Fueling Services, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 43), and Defendant Global Companies LLC's Motion to Dismiss Complaint (Doc. 45). Plaintiff responded in opposition to all three (3) motions. (Docs. 69, 70, 71.) Defendants Texas Fueling Services, Inc. and Global Companies, LLC both replied; however, Defendant Midnight Sun Logistics, LLC did not. (*See* Docs. 81, 83.)

As such, the motions are fully briefed and ripe for adjudication. In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument. As discussed below, the Court will recommend denying Defendant Midnight Sun's motion, and granting in part and denying in part the motions of Defendants Texas Fueling and Global Companies.

1

## I.    FACTUAL BACKGROUND[1]

2      Plaintiff Offen Petroleum, LLC ("Plaintiff" or "Offen") is a fuel distributor.  Compl.

3  (Doc. 1) at ¶ 30.  Offen receives the fuel it sells from a supplier and then sells the fuel to

4  its customer, which may be another fuel distributor.  *Id*. at ¶ 31.  The fuel may be sold from

5  distributor to distributor until ultimately reaching a final purchaser.  *Id*.  The final

6  purchaser, or a carrier hired by the final purchaser, goes to the fuel terminal to lift the

7  purchased fuel.  *Id*. at ¶¶ 31, 34.  Offen purchases the fuel it sells in Arizona from Marathon

8  Petroleum Company.  *Id*. at ¶ 31.  Offen has two (2) customers it sells fuel to in southern

9  Arizona—West Plains Propane and Defendant Global Companies—that buy products in

10  Tucson, Arizona with the intention of the product going into Mexico.  Compl. (Doc. 1) at

11  ¶ 32.  Offen has provided West Plains Propane and Global Companies with its loading

12  number to facilitate lifting Offen's fuel from fuel terminals in Arizona.  *Id*.

13      Offen adds its customers' designated carriers to its loading number at each fuel

14  terminal pursuant to its customers' requests.  *Id*. at ¶ 35.  If Offen's customer Global

15  Companies resells Offen's fuel to another distributor, who then resells it to another

16  distributor, the final distributor or its carrier is permitted to use Offen's loading number to

17  lift the fuel from the fuel terminal.  *Id*. at ¶ 36.  When the final purchaser or its carrier

18  arrives at the fuel terminal to pick up the purchased fuel, the driver enters the carrier's

19  identifying number, as well as Offen's loading number.  *Id*. at ¶ 37.  The driver then lifts

20  the fuel onto his/her trailer and hauls it to the next destination.  Compl. (Doc. 1) at ¶ 37.

21  The fuel terminal system records the type of fuel, date, time, and number of gallons lifted,

22  as well as generates a Bill of Lading ("BOL") that shows the party picking up the fuel (the

23  carrier identifier), the driver's name, the truck and trailer numbers, the fuel distributor's

24  loading number (in this case, Offen's), the type and amount of fuel being lifted, and the

25  date and time of the lift.  *Id*. at ¶¶ 38–39.  The driver lifting the fuel receives a physical

26

27  ―――――――――――

28  [1] For purposes of this Report and Recommendation only, the Court will take as true the allegations contained in Plaintiff's Complaint (Doc. 1).  *See Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

copy of the BOL, and Offen and its supplier (Marathon) receive electronic copies. *Id*. at ¶ 40. Offen then invoices its customer, Global Companies, for the fuel loads it purchased, who then invoices its downline customer, and so on. *Id*. at ¶ 41. Relevant to the loads in this case, Global Companies requested Defendants L&J Express, KWW, Shannon Transport, AZ Fuel Distributors, Transportes Zuniga, and EZ Fuel, all of whom are third party carriers, be added as authorized carriers under Offen's loading number at the fuel terminals in Arizona. *Id*. at ¶ 42.

In October, November, and December 2024, seventy-four (74) loads of fuel were lifted using Offen's loading number for which Global Companies claims it did not purchase. Compl. (Doc. 1) at ¶ 43. Offen did not give permission for the lifting of these fuel loads. *Id*. at ¶ 45. The BOLs for the seventy-four (74) missing loads reflect that sixty-one (61) loads were lifted by L&J Express; five (5) loads were lifted by Shannon Transport; two (2) loads were lifted by Transportes Zuniga; two (2) loads were lifted by KWW Trucking; one (1) load was lifted by AZ Fuel Distributors; and EZ Fuel lifted three (3) loads. *Id*. at ¶¶ 46–51. Offen contacted Shannon Transport and learned that at least some of the loads were lifted on behalf of Judaean Group. *Id*. at 57. Offen then contacted Altitude Fuel and the Judaean Group. *Id*. at ¶ 58. Offen learned that Texas Fueling sells fuel to Altitude Fuel who then sells it to Midnight Sun; Midnight Sun then sells fuel to Judaean Group who sells to AJMR. Compl. (Doc. 1) at ¶ 62. Offen also understands that Global Companies sells the fuel it purchases to Texas Fueling. *Id*. at ¶ 63.

Plaintiff alleges claims for Unjust Enrichment and Negligence against *inter alia* Defendants Midnight Sun, Texas Fueling, and Global Companies. *Id*. at ¶¶ 72–83.

## II.    STANDARD OF REVIEW

### A.    *Personal Jurisdiction*

Plaintiff bears the burden to demonstrate that this Court has jurisdiction over a Defendant. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). "[I]n the absence of an evidentiary hearing, [however,] the

plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). For purposes of Plaintiff's demonstration, the Court construes all disputed facts in the light most favorable to it. *Pebble Beach Co.*, 453 F.3d at 1154.

### B.    Failure to State a Claim

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed. R. Civ. P.  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.").

Rule 12(b)(6) motions are meant to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

"When ruling on a motion to dismiss, [the Court must] accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.

- 4 -

2005)).  "The court draws all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008)). This Court is not required, however, to accept conclusory statements as a factual basis.  *See Twombly*, 550 U.S. at 555; *Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) ("Although we must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss."). Accordingly, "[d]ismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims."  *Boquist v. Courtney*, 32 F.4th 764, 773–74 (alterations in original) (quoting *Admas v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting *Navarro*, 250 F.3d at 732) ("[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory").

## III.   ANALYSIS

Defendant Midnight Sun seeks dismissal of Plaintiff's Complaint (Doc. 1) pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for a failure to state a claim upon which relief can be granted because it does not have a contractual relationship with Plaintiff, and Rule 12(b)(2) for a lack of personal jurisdiction.  *See* Def. Midnight Sun's Mot. to Dismiss (Doc. 24).[2]  In the alternative, Defendant Midnight Sun requests a more definite statement from Plaintiff pursuant to Rule 12(e), Federal Rules of Civil Procedure.  *Id.* at 9–10. Defendants Texas Fueling and Global Companies also seek dismissal pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.  *See* Def. Texas Fueling Services, Inc.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 43); Def. Global Companies LLC's Mot. to Dismiss Compl. (Doc. 45).  These Defendants assert that Plaintiff has failed to sufficiently state a claim for unjust enrichment; they also assert that Plaintiff has failed to

---

[2] Counsel for Defendant Midnight Sun should review the Rules of Practice and Procedure of the U. S. District Court for the District of Arizona (the Local Rules) available on the Court's website, http://azd.uscourts.gov/, to ensure proper formatting of motions and other papers.

1    sufficiently state a claim for negligence because they owed no duty to Plaintiff. *See* Def.

2    Texas Fueling Services, Inc.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc.

3    43); Def. Global Companies LLC's Mot. to Dismiss Compl. (Doc. 45).  The Court will

4    address each of these arguments in turn.

5              **A.      *Personal Jurisdiction as to Defendant Midnight Sun***

6          "Where, as here, there is no applicable federal statute governing personal

7    jurisdiction, the district court applies the law of the state in which the district court sits."

8    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed.

9    R. Civ. P. 4(k)(1)(A); then citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320

10   (9th Cir. 1998)).  "In exercising personal jurisdiction, a federal district court is constrained

11   by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state

12   in which it sits."  *Doe v. Deutsche Lufthansa Aktiengesellschaft*, — F.4th —, 2025 WL

13   3030423, at *4 (9th Cir. 2025) (quoting *Impossible Foods Inc. v. Impossible X LLC*, 80

14   F.4th 1079, 1086 (9th Cir. 2023), *cert. denied*, — U.S. —, 144 S. Ct. 2561 (2024).

15   Arizona's long-arm statute allows courts to exercise personal jurisdiction over non-resident

16   defendants to the extent allowed by the Due Process Clause of the United States

17   Constitution.   Ariz. R. Civ. P. 4.2(a) ("A court of this state may exercise personal

18   jurisdiction over parties, whether found within or outside the state, to the maximum extent

19   permitted by the Constitution of this state and the Constitution of the United States."); *see*

20   *also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).  As such, "the

21   jurisdictional analysis in this case is the same under state and federal law."  *Impossible*

22   *Foods Inc.*, 80 F.4th at 1086.

23          In order for a court to exercise personal jurisdiction over a nonresident defendant,

24   that individual must "have certain minimum contacts with [the relevant forum] such that

25   the maintenance of the suit does not offend 'traditional notions of fair play and substantial

26   justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v.*

27   *Meyer*, 311 U.S. 457 (1940)).  Personal Jurisdiction can be either "general (sometimes

28   called all-purpose) jurisdiction" or "specific (sometimes called case-linked) jurisdiction."

*Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021); *see also Impossible Foods LLC*, 80 F.4th at 1086.  "A court may exercise general jurisdiction 'only when a defendant is 'essentially at home' in the State."  *Id.* (quoting *Ford Motor Co.*, 592 U.S. at 358).  "General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant."  *Ford Motor Co.*, 592 U.S. at 358 (citations omitted); *see also Briskin v. Shopify*, 135 F.4th 739, 750 (9th Cir. 2025) (*en banc*).  "For a corporate defendant, general jurisdiction is paradigmatically appropriate in the state in which the entity is incorporated or where it maintains its principal place of business."  *Impossible Foods Inc.*, 80 F.4th at 1086.  Defendant Midnight Sun is a Texas limited liability company with its principal place of business in Texas.  Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at 7.  Plaintiff Offen thus does not argue that Defendant Midnight Sun is subject to general jurisdiction in Arizona.  Pl.'s Response (Doc. 69) at 3 n.1.

Specific personal jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."  *Ford Motor Co.*, 592 U.S. at 359.  Defendant's contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State **or** entering a contractual relationship entered there."  *Id.* (citations omitted) (first alteration in original).  Specific personal jurisdiction is analyzed under a three-part test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Briskin*, 135 F.4th at 750–51 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Plaintiff bears the burden of satisfying the first two (2) prongs.  *Id.* at 751.  If Plaintiff succeeds, the burden shifts to Defendant Midnight Sun to "present a

1  compelling case that the presence of some other considerations would render jurisdiction

2  unreasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### 1.  Purposeful Availment / Purposeful Direction

4  The first prong requires Plaintiff to establish that Defendant Midnight Sun "either

5  purposefully availed itself of the privilege of conducting activities in [Arizona], or

6  purposefully directed its activities toward [Arizona]." *Schwarzenegger*, 374 F.3d at 802.

7  "A purposeful availment analysis is most often used in suits sounding in contract[;] . . .

8  [whereas,] [a] purposeful direction analysis . . . is most often used in suits sounding in tort."

9  *Id.* (citations omitted).  More recently, however, the Ninth Circuit Court of Appeals has

10 recognized that its "cases do not impose a rigid dividing line between purposeful direction

11 and purposeful availment, and the first prong of the personal jurisdiction test may be

12 satisfied by purposeful availment, by purposeful direction, or by some combination

13 thereof." *Briskin*, 135 F.4th at 751 n.10 (quotations and citations omitted).  "To analyze

14 whether the tort was purposefully directed to the forum state we employ the '*Calder*

15 effects' test, which 'focuses on the forum in which the defendant's actions were felt,

16 whether or not the actions themselves occurred within the forum.'"[3] *Briskin*, 135 F.4th at

17 751 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir.

18 2011)).  "If either the purposeful availment or purposeful direction test is met, or some

19 combination thereof, the first prong is satisfied." *Doe*, 2025 WL 3030423, at *5.

20 "[T]he purposeful direction test requires that the defendant (1) commit an

21 intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm

22 that the defendant knows will be suffered in the forum state." *Id.* (citations omitted).  "This

23 test does not require that the defendant be physically present in the forum state[.]" *Briskin*,

24 135 F.4th at 751–52.

25 Here, Plaintiff Offen's Complaint explains its understanding "that Texas Fueling

26 sells fuel to Altitude Fuel, who then sells it to Midnight Sun[;] Midnight Sun then sells the

27 fuel to Judaean Group and Judaean Group sells to AJMR."  Compl. (Doc. 1) at ¶ 62.

28

---

[3] *Calder v. Jones*, 465 U.S. 783 (1984).

1   Plaintiff Offen further alleges that Defendant Midnight Sun, along with other Defendants,
2   benefitted from the loads of fuel at issue because "they either purchased them, resold them,
3   received them, and/or have been paid for them, all of which is to their benefit." *Id*. at ¶ 74.
4   Plaintiff Offen explained its business operations, which include selling fuel in Arizona to
5   its customer Defendant Global Companies with the intent of the product going from
6   Arizona into Mexico. *Id*. at ¶ 32. Plaintiff further described fuel purchased from it may
7   be resold to another distributor, who then resells it to another distributor, until the fuel
8   reaches its final destination. *Id*. at ¶ 36.

9       Defendant Midnight Sun asserts "the Complaint fails to allege that Midnight Sun
10  had any control over these terminal operations or directed any carriers to lift fuel from these
11  terminals." Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at ¶ 27. It further asserts,
12  without citation, that "[t]he Ninth Circuit has consistently held that mere indirect
13  involvement or remote brokerage services do not satisfy the 'purposeful availment'
14  requirement." *Id*. at ¶ 28. Relying on *Doe v. Unocal Corp*., 248 F.3d 915, 924 (9th Cir.
15  2001), Defendant Midnight Sun next declares "the court explicitly stated that 'a contract
16  with a resident of a forum state is insufficient by itself to create personal jurisdiction over
17  the nonresident.'" Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at ¶ 28 (quoting *Doe*,
18  248 F.3d at 924). It continues stating, "[t]he court further emphasized that 'the formation
19  of a contract with a nonresident defendant is not, standing alone, sufficient to create
20  jurisdiction.'" *Id*. (quoting *Doe*, 248 F.3d at 924). Next, Defendant Midnight Sun asserts
21  that "in *Gray & Co. v. Firstenberg Machinery Co*., 913 F.2d 758, 760 (9th Cir. 1990), the
22  Ninth Circuit found that a defendant who merely served as a an intermediary in a
23  transaction involving goods that were eventually shipped to the forum state did not have
24  sufficient contacts to establish personal jurisdiction." Def. Midnight Sun's Mot. to Dismiss
25  (Doc. 24) at ¶ 29. Defendant Midnight Sun goes on to state, "[t]he [*Gray*] court noted that
26  the defendant 'did not control either the negotiations or the decision to ship the [product]
27  to [the forum state]." *Id*. (third and fourth alteration in original) (quoting *Gray*, 913 F.2d
28  758).

1    Defendant Midnight Sun's arguments are without merit. The quoted language and
2    the general propositions asserted do not exist in either *Doe* or *Gray*. Rather, the Ninth
3    Circuit Court of Appeals made clear "[p]urposeful availment, which satisfies the first part
4    of the Ninth Circuit test, requires a finding that the defendant '[has] performed some type
5    of affirmative conduct which allows or promotes the transaction of business within the
6    forum state.'"  *Doe*, 248 F.3d at 924 (second alteration in original) (quoting *Sher v.
7    Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). The *Gray* court observed that "[p]rior
8    negotiations and contemplated future consequences, along with the terms of the contract
9    and the parties' actual course of dealing" were factors for consideration in determining the
10   requisite minimum contacts necessary for the exercise of personal jurisdiction. *Gray*, 913
11   F.2d at 760 (citations omitted). The court further recognized that "[t]he foreseeability of
12   causing injury in another state is not a sufficient basis on which to exercise jurisdiction."
13   *Id.* (citations omitted). Upon analysis of the contacts between plaintiff and defendants in
14   negotiating a contract for sale, the *Gray* court determined they were insufficient to support
15   personal jurisdiction. *Id.* at 761.

16   In response to Defendant Midnight Sun's motion to dismiss, Plaintiff Offen asserts
17   that "Midnight Sun's actions were directed at Arizona, as it knew that AJMR is based in
18   Arizona and that Judaean Group sells Midnight Sun's fuel across Arizona, and therefore
19   knew it was selling and/or transporting fuel into Arizona." Pl.'s Response (Doc. 69) at 8
20   (citing *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155, 159 (9th Cir.
21   1980)). *Plant Food Co-op* involved the sale of fertilizer from a Canadian corporation
22   through several intermediate businesses in both Canada and the United States to a fertilizer
23   dealer in Montana. *See Plant Food Co-op*, 633 F.2d 155. Plaintiff correctly emphasizes
24   "[t]he forum State does not exceed its power under the Due Process Clause if it asserts
25   personal jurisdiction over a corporation that delivers its products into the stream of
26   commerce with the expectation that they will be purchased by consumers in the forum
27   State." *Id.* at 159 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–
28   98 (1980)). The Ninth Circuit Court of Appeals further recognized "[i]f the sale of a

product of a distributor is not an isolated occurrence, but arises from the efforts of the distributor to serve, directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suit in one of those states[.]" *Id*. Plaintiff's Complaint describes its business operations relevant to this case, which include selling fuel in Arizona to its customer Defendant Global Companies with the intent of the product going from Arizona into Mexico. Compl. (Doc. 1) at ¶ 32. Plaintiff further described the process by which fuel purchased from it may be sold and resold by distributors prior to reaching its final destination. *Id*. at ¶ 36. Regarding the fuel loads at issue here, Plaintiff alleges "that Texas Fueling sells fuel to Altitude Fuel, who then sells it to Midnight Sun[;] Midnight Sun then sells the fuel to Judaean Group and Judaean Group sells to AJMR." *Id*. at ¶ 62.

The Court finds that Plaintiff has met its burden to demonstrate that Defendant Midnight Sun "engaged in affirmative conduct to deliver its product into [Arizona;] [i]t was not brought into the forum by the unilateral act of another party[;] [and] [t]his contact with [Arizona] was voluntary and financially beneficial to [Defendant Midnight Sun.]" *Plant Food Co-op*, 633 F.2d at 159. This is true irrespective of whether or not Defendant Midnight Sun ever had physical possession of the fuel at issue. Plaintiff's Complaint (Doc. 1) sufficiently alleges that Defendant Midnight Sun committed an intentional act—the buying and reselling of fuel; the fuel was located in Arizona and intended for an ultimate destination of Mexico, Defendant Midnight Sun's actions were aimed at Arizona to facilitate such transfer; and any harm arising from the buying and selling of fuel would be felt in Arizona. Accordingly, Defendant Midnight Sun purposefully directed its activity toward Arizona.

## 2. <u>Arising Out Of or Relating To</u>

"The second requirement for specific jurisdiction is that plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum State." *Briskin v. Shopify, Inc.*, 135 F.4th, 739, 760. "The 'arises out of' test requires the defendant's contacts with the forum to be a but-for cause of the plaintiff's claims." *Doe*, — F.4th —, 2025 WL 3030423, at *6 (9th Cir. 2025) (citations omitted). "The 'relates to' test only requires a

'connection' between a plaintiff's suit and a defendant's activities." *Id.* (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).  Plaintiff's tort claims arise out of and relate to Defendant Midnight Sun's Arizona activities.  This is because the buying and selling of fuel through the chain of distributors, including Defendant Midnight Sun, is a but-for cause of the tort claims.  *See id.*  Plaintiff sold the fuel in Arizona, Defendant Midnight Sun bought and resold the fuel, which remained in Arizona, as part of the distribution chain.  *See* Compl. (Doc. 1) at ¶ 62.  Without Defendant Midnight Sun's participation, the distribution of Offen's fuel to Mexico would not have occurred, nor would have the resultant harm to Plaintiff arising from a lack of payment somewhere in the chain.  This does not mean Defendant Midnight Sun will ultimately be liable for Plaintiff's harm, but at this early stage, Plaintiff has met its burden to demonstrate a nexus between Defendant Midnight Sun's forum related activities and the harm alleged in this cause of action.

### 3. Reasonableness

The burden now shifts to Midnight Sun to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  "To analyze the reasonableness of asserting personal jurisdiction, we weigh seven factors:"

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Doe v. Deutsche Lufthansa Aktiengesellschaft*, — F.4th —, 2025 WL 303423, at *7 (9th Cir. 2025).

Defendant Midnight Sun failed to address this prong in its motion and did not file a reply.  "Purposeful interjection" weighs in favor of jurisdiction.  Defendant Midnight Sun

1   purposefully directive its fuel distribution activities toward Arizona.  *See id*.  The burden

2   on Defendant Midnight Sun for defending this case is neutral—"modern advances in

3   communications and transportation have significantly reduced the burden of litigating in

4   another [state]."  *Id*. (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir.

5   1988)).  The extent of conflict with the sovereignty of the defendant's state is neutral, but

6   Arizona has a large interest in adjudicating the dispute, which involves an Arizona plaintiff

7   who was harmed in the course of doing business within Arizona.  The most efficient

8   judicial resolution of the controversy is neutral to weighing slightly in favor of jurisdiction.

9   This matter is already pending before an Arizona district court.  The importance of the

10  forum to the plaintiff's interest in convenient and effective relief weighs in favor of

11  jurisdiction.  Plaintiff Offen is an Arizona company, who suffered harm within the state's

12  borders.  Finally, the existence of an alternative forum is neutral.  Accordingly, the Court

13  finds that the exercise of personal jurisdiction over Defendant Midnight Sun is reasonable.

14          **B.      *Rule 12(b)(6) Motions—Failure to State a Claim***

15                  **1.      Defendant Midnight Sun**

16          Defendant Midnight Sun asserts that it lacks "a direct contractual relationship" with

17  Plaintiff.  Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at 5.  This fact is irrelevant.

18  Plaintiff's claims sound in tort and unjust enrichment is an equitable remedy.  As such, a

19  contractual relationship is not required.  Defendant Midnight Sun only seeks dismissal of

20  Plaintiff's unjust enrichment claim and only mentions the conversion and negligence

21  claims asserted in the Complaint in passing.[4]  *See id*. at 5–6.

22          Defendant Midnight Sun further asserts, "[u]nder well-established precedent, a

23  broker who does not assume liability is not responsible for payment in a distribution chain."

24  Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at ¶ 14 (citing *Wichansky v. Zowine*, 150

25  _____

26          [4] Plaintiff's Complaint (Doc. 1) does not allege a conversion claim against Defendant
27  Midnight Sun.  *See* Compl. (Doc. 1) at 8.  Moreover, because of the lack of any meaningful
    argument for dismissal of the negligence claim, the Court finds the argument waived.  *Handa v.*
28  *Clark*, 401 F.3d 1129, 1132 (9th Cir. 2005) ("a mere passing reference to a . . . claim is not
    sufficient to raise that claim before the district court[.]")

F. Supp. 3d 1055, 1074–75 (D. Ariz. 2015)).  It describes *Wichansky* as "finding no liability where a party merely facilitated a transaction without assuming payment obligations[.]"  *Id.*  *Wichansky*, however, makes no such finding.  In fact, the pages cited by Defendant Midnight Sun involve a defamation claim.  *See Wichansky*, 150 F. Supp. 3d at 1074 ("Wichansky contends that Zowine defamed him by approaching one of Wichansky's friends and misrepresenting that Wichansky's wife was having an affair, and that Wichansky's child was the product of that affair.")  *Wichansky* was before the court on summary judgment regarding claims for 1) a breach of fiduciary duty by defendant Zowine which contributed to or failed to prevent a pattern of overbilling at a wholly-owned subsidiary of the parties; 2) violation of the Computer Fraud and Abuse Act (CFAA); 3) constructive fraud; 4) defamation; 5) assault and battery; 6) intentional interference with contract; and aiding and abetting.  *Id.* at 1061–77.  Moreover, the intentional interference claim related to defendants' defamatory statements and was unrelated to any issues regarding the sale of goods or services.  This is the third citation in Defendant Midnight Sun's brief that was incorrect.

Defendant Midnight Sun also claims that "[t]he evidence conclusively demonstrates that Offen Petroleum itself identified AJMR Distributors—not Midnight Sun—as the responsible party for the disputed fuel loads."  Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at ¶ 14.  "[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruling on other grounds recognized by Loumena v. Hammon*, 2015 WL 7180679 (N.D. Cal. Nov. 16, 2015).  Furthermore, consideration of matters outside the pleading converts the Rule 12(b)(6) motion to a Rule 56 motion for summary judgment, unless one of two exceptions are met:

> First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take

judicial notice of matters of public record.

*Lee*, 250 F.3d at 688–89 (internal quotations and citations omitted); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents").  The e-mails proffered by Defendant Midnight Sun were not attached to the Complaint (Doc. 1), nor did Plaintiff necessarily rely upon them.  Furthermore, they are not sufficiently reliable for this Court to take judicial notice of them.  Defendant Midnight Sun's argument is the type of factual challenge that is irrelevant to the sufficiency of Plaintiff's complaint.  *See Lee*, 250 F.3d at 688.

The Ninth Circuit Court of Appeals has reviewed the United States Supreme Court cases which suggest a heightened pleading standard under Rule 8(a), Federal Rules of Civil Procedure, as well as those which unequivocally endorsed notice pleading.  *Starr v. Baca*, 652 F.3d 1202, 1213–14 (9th Cir. 2011) (analyzing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).  The *Starr* court found "the following two principles common to all of [these cases:]"

> First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id*. at 1215.  The Ninth Circuit found that at the motion to dismiss stage of the litigation, the standard "is not that plaintiff's explanation must be true or even probable[,]" only that "[t]he factual allegations of the complaint . . . 'plausibly suggest an entitlement to relief.'"  *Id*. at 1216–17 (quoting *Iqbal*, 129 S. Ct. 1951).  Furthermore, "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible."  *Id.* at 1216.

1    Plaintiff Offen's Complaint (Doc. 1) sufficiently outlines the facts known to it

2    regarding the fuel distribution chain and the harm it is alleged to have suffered.  Defendant

3    Midnight Sun is properly on notice as to the claims it is required to defend itself against.

4    As a result, it is recommended that Defendant Midnight Sun's motion to dismiss, which is

5    based solely on the nonexistence of a contractual relationship, be denied.

6    **2.**     **Defendants Global Companies and Texas Fueling Services, Inc.**

7    Defendants Global Companies and Texas Fueling Services, Inc. raise similar

8    arguments in their motions to dismiss (Docs. 43 and 45).  Texas fueling asserts that "Offen

9    offers no factual support in its Complaint for its assertion that Texas Fueling 'either

10   purchased [the loads of fuel], resold them, received them, and/or have been paid for them.'"

11   Def. Texas Fueling's Mot. to Dismiss (Doc. 43) at 6.  Defendant Texas Fueling urges that

12   Plaintiff has not plead sufficient factual content for this Court to draw a reasonable

13   inference that Texas Fueling is liable for the misconduct alleged.  *Id*.  Defendant Global

14   Companies directs the Court to Plaintiff's "admission" that "it did not purchase or resell

15   the 74 loads at issue in this action to any party[,]" to demonstrate grounds for relief from

16   any liability.  Def. Global Companies' Mot. to Dismiss (Doc. 45) at 4 (quoting Complaint

17   (Doc. 1) at ¶ 6).  Plaintiff's explanation need not be true or even probable, so long as it

18   plausibly suggests entitlement to relief.  *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir.

19   2011) (quoting *Iqbal*, 129 S. Ct. 1951).  Moreover, where "there are two alternative

20   explanations, one advanced by defendant and the other advanced by plaintiff, both of which

21   are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Id*.

22   at 1216.

23   **a.  Unjust Enrichment**

24   In Arizona, "[a]n unjust enrichment claim requires proof of five elements: (1) an

25   enrichment, (2) an impoverishment, (3) a connection between the enrichment and

26   impoverishment, (4) the absence of justification for the enrichment and impoverishment,

27   and (5) the absence of a remedy provided by law."  *Wang Elec., Inc. v. Smoke Tree Resort,*

28   *LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (quotations and citations omitted).  "Unjust

enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010) (citations omitted).  The "benefit may be any type of advantage, including that which saves the recipient from any loss or expense." *Pyeatte v. Pyeatte*, 661 P.2d 196, 202 (Ariz. Ct. App. 1982) (citing *John A. Artukovich & Sons, Inc. v. Reliance Truck Co.*, 614 P.2d 327, 329 (Ariz. 1980)).  "The remedy is flexible and available when equity demands compensation for benefits received, 'even though [the party] has committed no tort and is not contractually obligated to the other.'"  *Wang Elec., Inc.*, 283 P.3d at 49 (alterations in original) (quoting *Murdock-Bryant Constr., Inc. v. Pearson*, 703 P.2d 1197, 1202 (Ariz. 1985).

Defendant Texas Fueling asserts that Plaintiff "has not and cannot plead sufficient facts to show that Texas Fueling was involved in the sale of the loads of fuel at issue, and further cannot establish any connection between any enrichment received by Texas Fueling and the alleged impoverishment suffered by Offen."  Def. Texas Fueling's Mot. to Dismiss (Doc. 43) at 7.  Similarly, Defendant Global Companies asserts that Plaintiff's Complaint (Doc. 1) fails (1) to allege "any 'enrichment' or 'benefit' that Plaintiff conferred on Global"; and (2) to "connect Plaintiff's alleged impoverishment to the purported enrichment conferred on Global."  Def. Global Companies' Mot. to Dismiss (Doc. 45) at 5–6.

Plaintiff's Complaint identifies Defendant Global Companies as one (1) of two (2) customers "to whom it sells fuel in southern Arizona that are associated with buying products in Tucson, Arizona with the intent of the product going into Mexico[.]"  (Doc. 1 at ¶ 32.)  Taking the allegations as true, "[r]elevant here, Global Companies requested that Defendants L& J Express, KWW, Shannon Transport, AZ Fuel Distributors, Transportes Zuniga, and EZ Fuel, all of whom are third party carriers, be added as authorized carriers under Offen's loading number at the fuel terminals in Arizona."  *Id*. at ¶ 42.  Additionally, Plaintiff identified Defendant Texas Fueling as a fuel purchaser from Defendant Global Companies.  *Id*. at ¶ 63.  Defendant Texas Fueling sells fuel to Altitude Fuel, who then

sells it to Midnight Sun, who sells it to Judaean Group, who sells it to AJMR, who is permitted to move fuel across the border into Mexico. *Id*. at ¶¶ 58, 62. "In October, November, and December 2024, 74 loads of fuel were lifted using Offen's loading number for which Global Companies claims it did not purchase." *Id*. at ¶ 43. Defendant Global Companies paid for twenty-four (24) of the seventy-four (74) loads, but later informed Offen that it did not purchase the loads and demanded return of the amounts paid. Complaint (Doc. 1) at ¶ 44. "In total, 74 loads of fuel were lifted under Offen's loading number and without Offen's authorization, at a total loss to Offen of $1,421,482.06." *Id*. at ¶ 64. Plaintiff has paid Marathon Petroleum Company, it's fuel supplier, for the 74 loads at issue. *Id*. at ¶ 65.

Plaintiff's Complaint establishes a plausible enrichment of Defendants Global Companies and Texas Fueling in the form of fuel valued at $1,421,482.06. Compl. (Doc. 1) at ¶ 64. Plaintiff did not receive payment for the fuel, thereby establishing an impoverishment.

Plaintiff connects Defendants' enrichment to its impoverishment by alleging that it contracted with Defendant Global Companies for the purpose of selling fuel to be exported to Mexico. *Id*. at ¶ 32. Defendant Global Companies sells fuel to Defendant Texas Fueling. *Id*. at ¶ 63. Defendant Texas Fueling sells fuel to Defendant Altitude Fuel, the fuel is then bought and sold by various other defendants and ultimately is crossed into Mexico. *Id*. at ¶¶ 58, 62. There is no justification for Plaintiff's impoverishment—fuel owned by Plaintiff was removed from the facility where it was held and Plaintiff has not received compensation for that fuel.[5] Defendants argue that grouping them together fails to establish

---

[5] Plaintiff's Complaint acknowledges that Defendant Global Companies paid for twenty-four (24) of the seventy-four (74) loads and its subsequent demand for repayment. Compl. (Doc. 1) at ¶ 44. Global Companies confirms that it paid for some of the loads, but asserts that this payment was in error and denies any liability for the missing loads. Def. Global Companies' Mot. to Dismiss (Doc. 45) at 3–4. Putting Defendant Global Companies' denial of liability aside, for purposes of analyzing Plaintiff's Complaint, however, there is no dispute that Plaintiff received only partial payment for the seventy-four (74) loads from Defendant Global Companies. *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruling on other grounds recognized by Loumena v. Hammon*, 2015 WL 7180679 (N.D. Cal. Nov. 16, 2015) (factual challenges "have

1    a requisite connection.  Def. Global Companies' Mot. to Dismiss (Doc. 45) at 5; Reply
2    (Doc. 83) at 5; Def. Texas Fueling's Mot. to Dismiss (Doc. 43) at 7.  The cases cited by
3    Defendants are inapposite.

4        In *Taylor v. United States*, "[t]he complaint reference[d] numerous state and federal
5    statutes, assert[ed] violations of a host of constitutional rights, and identifie[d] various state
6    law theories of liability, but d[id] not include any individual counts or separate claims for
7    relief."  Case No. CV-09-2393-PHX-DGC, 2010 WL 729496, at *1 (D. Ariz. Feb. 26,
8    2010).  A *pro se* plaintiff lumping claims and defendants together presents a jumble that
9    does not exist in the instant case.  *See id.* (noting "undefined assertions of liability").

10       In *Nickolas v. Structured Asset Mortg. Inv. II Tr. 2006-AR8*, the plaintiff claimed
11   unjust enrichment based on the Defendants alleged failure to properly apply payments to
12   his mortgage account.  Case No. CV-12-01922-PHX-ROS, 2013 WL 11826532, at *3 (D.
13   Ariz. July 18, 2013).  The *Nickolas* plaintiff "d[id] not straightforwardly allege that
14   Nickolas made payments to *these* Defendants and that those payments were not applied to
15   his outstanding balance."  *Id*.  Recounting the facts alleged, the court noted, "[a]t some
16   point in time, Nickolas stopped making payments on the promissory note[.]"  *Id*. at *1.
17   The court further observed, "[i]t is unclear what happened after the cancelled trustee sales,
18   but it appears Nickolas continued to occupy the property without making payments on the
19   promissory note."  *Id*. at *1.  The *Nickolas* plaintiff made the payments at issue and
20   ostensibly knew to whom those payments were made.  In contrast, Plaintiff Offen sold the
21   fuel but does not know who in the network of buyers failed to pay.  As such, it has named
22   as Defendants the parties that it believes are potentially culpable.

23       In *D'Agostino v. Comenity Cap. Bank*, the plaintiff alleged the defendants acquired
24   his credit card account at a discounted price but failed to establish how they were unjustly
25   enriched.  Case No. CV-24-00728-PHX-SPL, 2025 WL 69373, at *7 (D. Ariz. Jan. 10,
26   2025) (rejecting the assertion that attempting to collect the full amount of the debt was an
27   unjust enrichment).  The court further found that to the extent defendant Midland wrongly

28

---

no bearing on the legal sufficiency of the allegations under Rule 12(b)(6).").

1    received plaintiff's payments, any such receipt arose from plaintiff's contractual

2    agreements with defendant Midland or defendant Comity.  *Id.* (finding plaintiff's claims

3    arose in contract and the equitable claim was unavailable).  Plaintiff Offen did not have

4    contractual agreements with Defendants.  Compl. (Doc. 1) at ¶ 78.

5          Finally, there is no adequate remedy at law for Plaintiff's loss.  It did not hold

6    contracts with any Defendants.  *Id.*  Defendant Texas Fueling urges that Plaintiff has an

7    adequate remedy at law "in the form of damages for Offen's other causes of action against

8    either the Carriers or its customer(s), including Global[,] [and] [i]f Offen can recover on

9    those causes of action, it does not need, nor can it have a cause of action for unjust

10   enrichment against others."  Def. Texas Fueling's Mot. to Dismiss (Doc. 43) at 7–8.  This

11   reasoning is unsupported by Arizona law and entirely speculative.  The legal remedy

12   barring a cause of action for unjust enrichment "must be against the same [entity] from

13   whom relief in equity is sought."  *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 947

14   (Ariz. Ct. App. 2010) (citations omitted).  As such, Plaintiff is not prohibited from seeking

15   damages on an unjust enrichment claim from Defendant Texas Fueling simply because

16   there may be other parties partially or wholly at fault. *Id.*; *cf. Griffey v. Magellan Health

17   Inc.*, 562 F. Supp. 3d 34, 48 (D. Ariz. 2021) (recognizing "although recovery for breach of

18   an implied contract would preclude recovery for unjust enrichment, Plaintiffs may plead

19   both breach of implied contract and unjust enrichment in their Amended Complaint.").

20   Furthermore, it is not "necessary that plaintiff suffer a loss corresponding to the defendant's

21   gain for there to be a valid claim for an unjust enrichment[.]"  *John A. Artukovich & Sons*,

22   614 P.2d at 329.

23         Defendant Global Companies further asserts that Plaintiff's failure to respond to its

24   argument "that none of the Bills of Lading ('BOLs') attached as exhibits to the Complaint

25   identify Global as the recipient of *any* of the 74 fuel loads" should result in granting of the

26   motion to dismiss.  Def. Global Companies' Reply (Doc. 83) at 5.  This argument also fails.

27   Plaintiff's Complaint describes it added certain entities "as authorized carriers under

28   Offen's loading number at the fuel terminals in Arizona" at Defendant Global Companies'

request.  (Doc. 1) at ¶ 42.  The fuel terminal system records the type of fuel, date, time, and number of gallons lifted, as well as generates a Bill of Lading ("BOL") that shows the party picking up the fuel (the carrier identifier), the driver's name, the truck and trailer numbers, the fuel distributor's loading number (in this case, Offen's), the type and amount of fuel being lifted, and the date and time of the lift.  *Id*. at ¶¶ 38–39.  The driver lifting the fuel receives a physical copy of the BOL, and Offen and its supplier (Marathon) receive electronic copies.  *Id*. at ¶ 40.  Offen then invoices its customer, Global Companies, for the fuel loads it purchased, who then invoices its downline customer, and so on.  *Id*. at ¶ 41.  The BOLs attached to Plaintiff's Complaint are connected to the carriers Defendant Global Companies asked Plaintiff to allow to lift fuel from its facilities.  *Id*. at ¶¶ 46–51.  Global Companies' argument did not require a response by the plaintiff because the Complaint speaks for itself.

At this stage of the litigation, Plaintiff is not required to accept Defendants' blanket denials of liability.  Where "there are two alternative explanations, one advanced by defendant[s] and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).  *Starr*, 652 F.3d at 1216.  Accordingly, it is recommended that Defendants' motions (Docs. 43 and 45) to dismiss Plaintiff's unjust enrichment claim be denied.

### b.  Negligence

In Arizona, "[t]o establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury and (4) actual damages."  *CVS Pharmacy v. Bostwick in and for Cnty. of Pima*, 494 P.3d 572, 578 (Ariz. 2021) (quoting *Quiroz v. ALCOA Inc*., 416 P.3d 824, 827–28 (Ariz. 2018)).  "Duty is defined as an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm."  *Gipson v. Kasey*, 150 P.3d 228, 231 (Ariz. 2007) (quotations and citations omitted).  "Whether a duty exists 'is a legal matter to be determined *before* the case-specific

facts are considered.'"  *Quiroz*, 416 P.3d at 828 (alterations in original) (quoting *Gipson*, 150 P.3d at 232).  Specifically, this analysis occurs "without considering the case-specific facts concerning breach and causation."  *CVS Pharmacy*, 494 P.3d at 578 (citations omitted).

The Arizona Supreme Court delineated Arizona's duty framework as follows:

> First, duty is not presumed, and the plaintiff has the burden of establishing its existence. . . . Second, foreseeability is not a factor in determining duty. . . . Third, duty is based on common law special relationships or relationships created by public policy. . . . Finally, the sources for identifying public policy are state and federal statutes and the common law.

*Id*. (citations omitted).  "[S]pecial relationships [are] recognized by the common law, contracts, or 'conduct undertaken by the defendant.'" *Id*. (alterations in original) (quoting *Quiroz*, 416 P.3d at 829)).  Furthermore, the court should "exercise great restraint in declaring public policy, which is ordinarily the prerogative of the legislative bodies." *Id*. (quotations and citations omitted).

Defendants Texas Fueling and Global Companies assert that Plaintiff's Complaint (Doc. 1) fails to allege sufficient facts to establish that either Defendant owed Plaintiff a specific duty supporting a negligence claim.  Def. Texas Fueling's Mot. to Dismiss (Doc. 43) at 8–9; Def. Global Companies' Mot. to Dismiss (Doc. 45) at 8–9.  Citing to its Complaint (Doc. 1), Plaintiff Offen urges that all Defendants owed it a duty "to act reasonably when it purchased, sold, and/or lifted fuel using Offen's fuel terminal loading number."  Pl.'s Response to Texas Fueling (Doc. 70) at 6; Pl.'s Response to Global Companies (Doc. 71) at 5.  Plaintiff further asserts that this duty "is rooted in public policy based on state statutes and the common law."  ((Doc. 70) at 6 (citing *Quiroz*, 416 P.3d at 829); (Doc. 71) at 5 (citing *Quiroz*, 416 P.3d at 829)).

In response to Defendants' motions, Plaintiff relies on Arizona's Uniform Commercial Code ("the UCC") as the statutory basis for Defendants' duty.  ((Doc. 70) at 6; (Doc. 71) at 6.)  It notes that "[t]he disputed loads of fuel constitute goods under the UCC, and this matter concerns the purchase, sale, and/or distribution of loads of fuel."

1    ((Doc. 70) at 7 (citing A.R.S. §§ 47-2102, 47-2105(A), 47-2107(A)); (Doc. 71) at 6

2    (same)).  Plaintiff urges that pursuant to the UCC, a buyer has a duty to pay for goods upon

3    delivery; once the goods have been delivered, a buyer's right to keep or dispose of them is

4    conditioned upon paying the seller; and that "every duty within the UCC imposes an

5    obligation of good faith on the parties."  ((Doc. 70) at 6–7 (citing A.R.S. §§ 47-2507(A) &

6    (B), 47-1304); (Doc. 71) at 6 (same)).  Plaintiff's reliance on the UCC is misplaced.

7        "For a statute to create a duty: (1) the plaintiff must be 'within the class of persons

8    to be protected by the statute,' and (2) the harm must be of the type 'the statute sought to

9    protect against.'"  *Cal-Am Properties Inc. v. Edais Engineering Inc.*, 509 P.3d 386, 390

10   (Ariz. 2022) (quoting *Quiroz*, 416 P.3d at 829)).  Section 47-1304, upon which Plaintiff

11   relies, provides "[e]very contract or duty within this title imposes an obligation of good

12   faith in its performance and enforcement."  The comments to this statute are instructive.

13   As an initial matter, "[t]his section sets forth a basic principle running throughout the

14   Uniform Commercial Code[,] . . . in commercial transactions good faith is required in the

15   performance and enforcement of all agreements or duties."  A.R.S. § 47-1304, cmt. 1.

16   "This section does **not,** [however,] support an independent cause of action for failure to

17   perform or enforce in good faith."  *Id.* (emphasis added).  "Rather, this section means that

18   a failure to perform or enforce, in good faith, a specific duty or obligation under the

19   contract, constitutes a breach of that contract or makes unavailable, under the particular

20   circumstances, are medial right or power."  *Id.*  "This distinction makes it clear that the

21   doctrine of good faith merely directs a court towards interpreting contracts within the

22   commercial context in which they are created, performed, and enforced, and **does not**

23   **create a separate duty of fairness and reasonableness which can be independently**

24   **breached**."[6]  *Id.* (emphasis added).  These comments highlight that any obligation of good

25   faith under the UCC does not establish a legal duty owed by Defendants in the context of

26

27   _____

28   [6] Defendant Global Companies urges reliance on out-of-state authority for this conclusion.
The Court declines the invitation, in part, because both cases contemplate secured transactions,
rather than the buying and selling of goods, as relevant in the instant case.

a negligence claim.

Additionally, "[c]ourts have not recognized a general duty to exercise reasonable care for the purely economic well-being of others as distinguished from their physical safety or the physical safety of their property." *Lips v. Scottsdale Healthcare Corp.*, 229 P.3d 1008, 1010 (Ariz. 2010) (citations omitted).  Neither does Arizona recognize a "duty to control the conduct of a third party unless '(a) a special relation exists between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct, or (b) a special relation exists between the [defendant] and the [plaintiff] which gives the [plaintiff] a right of protection.'"  *Bloxham v. Glock Inc.*, 53 P.3d 196, 199 (Ariz. Ct. App. 2002) (alterations in original) (quoting *Martinez v. Woodmar IV Condominiums Homeowners Ass'n*, 941 P.2d 218, 219–20 (Ariz. 1997)).

Plaintiff's well-pleaded complaint does not contain any facts to support a buyer/seller relationship or any other transactions between Plaintiff and Defendant Texas Fueling such that the UCC would apply, or that Defendant Texas Fueling owed Plaintiff a legal duty.  It is plausible that Plaintiff could demonstrate such a relationship with Defendant Global Companies; however, in its current state, the Complaint does not contain sufficient facts to establish that Defendant Global Companies owed Plaintiff a legal duty. The lack of relationship with Defendant Texas Fueling, and the lack of facts to establish a duty owed by either Defendant is fatal to Plaintiff's negligence claim.  *See Gipson*, 150 P.3d at 230 (citations omitted) ("absent some duty, an action for negligence cannot be maintained").  As such, it is recommended that Defendants' motions to dismiss the negligence claim be granted.  Because Plaintiff may be able to plead sufficient facts to establish a legal duty, it is recommended that leave to amend the complaint be granted. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1988) (citations omitted) (finding leave to amend is proper "if it appears at all possible that the plaintiff can correct the defect.").

### C.    Defendant Midnight Sun's Motion for More Definite Statement

Defendant Midnight Sun seeks a more definite statement in the alternative to

- 24 -

dismissal.  Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at 9–10.

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "Rule 12(e) is designed to strike at unintelligibility rather than want of detail." *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 649 (D. Ariz. 1994) (citations omitted).  "A motion under Rule 12(e) should not be used to test an opponent's case by requiring them to allege certain facts or retreat from their allegations." *Id.* (citations omitted).  "Rule 12(e) motions are viewed with disfavor and are rarely granted." *Adobe Systems, Inc. v. A & S Electronics, Inc.*, 153 F. Supp. 3d 1136, 1147 (N.D. Cal. 2015) (quotations and citations omitted).  Moreover, "courts have much discretion to grant or deny motions for more definite statements as may be appropriate in the particular case." *Renfrow v. BDP Innovative Chemicals, Co.*, No. CV-14-01183-PHX-GMS, 2015 WL 13036933 (D. Ariz. May 20, 2015) (quotations and citations omitted).

Defendant Midnight Sun claims that Plaintiff's Complaint (Doc. 1) contains "[s]uch vague and ambiguous allegations" that it is "impossible for Midnight Sun to formulate an accurate response."  Def. Midnight Sun's Mot. to Dismiss (Doc. 24) at ¶ 35.  The Court disagrees.  Defendant Midnight Sun seeks a complaint that contains specific information that Plaintiff may not possess.  The federal procedural rules provide for notice pleading and a discovery process to allow litigants the opportunity to understand the facts of a case. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.").  The Court finds that Plaintiff Offen's Complaint (Doc. 1) is not unintelligible and recommends that Defendant Midnight Sun's motion for more definite statement be denied.

## IV.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Court enter an order:

(1) DENYING Defendant Midnight Sun Logistics, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 24);

(2) GRANTING IN PART and DENYING IN PART Defendant Texas Fueling Services, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 43);

(3) GRANTING IN PART and DENYING IN PART Defendant Global Companies LLC's Motion to Dismiss Complaint (Doc. 45); and

(4) GRANTING Plaintiff leave to amend its Complaint as to the Negligence claim.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the Hon. John C. Hinderaker. If objections are filed, the parties should use the following case number: **CV-25-00061-TUC-JCH**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall terminate the magistrate reference as to **only** the **motions** listed in this section and send a copy of this Report and Recommendation to all parties.

Dated this 16th day of January, 2026.

Eric J. Markovich
United States Magistrate Judge